# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BLUE MOUNTAIN ENERGY, INC., | **MEMORANDUM DECISION AND ORDER GRANTING [67] UNITED STATES' SECOND MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | Case No. 2:14-cv-418-DN |
| Defendant. | District Judge David Nuffer |

Plaintiff, Blue Mountain Energy, Inc ("BME") disputes the amount of tax assessed and the imposition of accuracy-related penalties by the Internal Revenue Service ("IRS"). BME's Complaint contains a single cause of action against the United States of America ("Government"): a refund of the taxes and the penalty paid under protest for the years 2008–2012.[1]

The prior Memorandum Decision and Order ("Prior Summary Judgment Order")[2] in this case denied BME's Motion for Summary Judgment and granted in part and denied in part the Government's Motion for Summary Judgment.[3] Specifically, the Prior Summary Judgment Order determined that the assessed tax for 2008–2012 stands and that an issue of fact precluded summary judgment on the issue of whether the 20% accuracy related tax penalty was properly

---

[1] Corrected Amended Complaint ("Complaint") ¶¶ 43-50, docket no. 26, filed December 30, 2014.

[2] Memorandum Decision and Order ("Prior Summary Judgment Order"), docket no. 60, filed August 5, 2016.

[3] *Id.* at 22.

imposed for those years.[4] The Government now moves for summary judgment ("Second Motion for Summary Judgment")[5] on this remaining issue.

BME opposed the motion.[6] The Government replied.[7] Based on the following, the undisputed facts show that, as a matter of law, BME is not entitled to a refund of the accuracy related penalty because BME did not have a reasonable basis and it did not act in good faith and with reasonable cause as to its tax return position for the tax years in question. The penalty was appropriately imposed and BME will not be refunded for penalty paid under protest. The Second Motion for Summary Judgment is GRANTED.

BACKGROUND ............................................................................................................ 3
UNDISPUTED MATERIAL FACTS ........................................................................... 7
STANDARD OF REVIEW ............................................................................................ 8
DISCUSSION ................................................................................................................. 9
    A.    BME Is Subject to An Accuracy Related Tax Penalty Because Neither Underpayment Penalty Exception Applies. ............................................. 9
        1.    BME's Reliance on Its Own Interpretation of 26 U.S.C. § 4216(b) and Revenue Ruling 81-188 is Not A Reasonable Basis for Its Return Position in Its Tax Filings. ....................................................................... 9
        2.    BME Reliance on Reliance on Its Own Interpretation of 26 U.S.C. § 4216(b) and Revenue Ruling 81-188 Does Not Show That BME Had Reasonable Cause or Acted in Good Faith with Respect to Its Return Position. ....................................................................................... 13
ORDER .......................................................................................................................... 16

---

[4] *Id.* at 21.

[5] United States' Second Motion for Summary Judgment ("Second Motion for Summary Judgment"), docket no. 67, filed January 30, 2017.

[6] BME's Memorandum in Opposition to United States' Second Motion for Summary Judgement ("Opposition"), docket no. 70, filed March 14, 2017.

[7] United States' Reply Brief for Second Motion for Summary Judgment ("Reply"), docket no. 71, March 28, 2017.

# BACKGROUND

BME is contesting the IRS's assessment of Black Lung Excise Taxes ("Excise Tax").[8]
The Excise Tax "provides benefits to coal-mine workers disabled by lung diseases caused by exposure to coal dust."[9] The Excise Tax is assessed by tonnage of coal sold by the producer.[10]
BME is a producer with operations in Utah and Colorado.[11]

The tax is imposed by 26 U.S.C. § 4121, which provides:

> (a) Tax imposed.--
>> (1) In general.--There is hereby imposed on coal from mines located in the United States sold by the producer, a tax equal to the rate per ton determined under subsection (b).
>> (2) Limitation on tax.--The amount of the tax imposed by paragraph (1) with respect to a ton of coal shall not exceed the applicable percentage (determined under subsection (b)) of the price at which such ton of coal is sold by the producer.
> (b) Determination of rates and limitation on tax.--For purposes of subsection (a)--
>> **(1)** the rate of tax on coal from underground mines shall be $1.10,
>> **(2)** the rate of tax on coal from surface mines shall be $.55, and
>> **(3)** the applicable percentage shall be 4.4 percent. [12]

The statute sets the Excise Tax at $1.10 per ton for underground coal, but the Excise Tax is capped at 4.4% of the "price at which such ton of coal is sold by the producer."[13] "Thus, coal from underground mines that sells for less than $25.00 per ton is taxed at a rate of 4.4 percent *ad valorem* instead of the flat rate of $1.10 per ton (4.4 percent of $25 equals $1.10)."[14]

---

[8] Complaint ¶¶ 16–42.

[9] *Davis v. United States*, 972 F.2d 869, 869 (7th Cir. 1992).

[10] Second Motion for Summary Judgment at 2.

[11] Complaint ¶¶ 1-2.

[12] 26 U.S.C. § 4121.

[13] *Id.* § 4121(a).

[14] *Costain Coal, Inc. v. United States*, 36 Fed. Cl. 38, 39–40 (1996), *aff'd*, 126 F.3d 1437 (Fed. Cir. 1997).

BME is a wholly-owned subsidiary of Deseret Generation & Transmission Cooperative ("Deseret Power").[15] BME owns and operates the Deserado Coal Mine, an underground coal mine near Rangely, Colorado ("Deserado Mine").[16] Deseret Power owns and operates the Bonanza Electric Generating Unit in Uintah County, Utah ("Bonanza Plant").[17] With the Bonanza Plant, Deseret Power provides electric generation and transmission services to its members primarily in rural areas of Utah and elsewhere.[18] Coal from the Deserado Mine is used exclusively by Deseret Power in providing primary fuel for the Bonanza Plaint.[19]

As a producer of coal, BME filed Quarterly Federal Excise Tax Returns (Form 720) for each of the quarters at issue in this case.[20] "After BME filed original excise tax returns, BME was subsequently audited by [the] IRS, and as a result of the audit findings by the IRS was assessed additional amounts of Excise Tax for coal produced underground from the Deserado Mine for the years 2008 through [2012] . . . ."[21] "The IRS claimed that the non-arm's length transfer amount used between Deseret and BME represents the 'price at which [Deserado] coal is sold,' and that such transfer amount is high enough that no limitation on the statutory $1.10 per ton Excise Tax amount should apply."[22] "BME paid in full [on October 8, 2013], under protest, all amounts of additional Excise Tax assessed by the IRS as a result of its disputed audit findings."[23] BME eventually filed a protest and sought administrative appeals of the IRS'

---

[15] Complaint ¶3.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Second Motion for Summary Judgement at 3; Complaint ¶ 17.

[21] Complaint ¶ 12.

[22] *Id.* ¶ 20.

[23] *Id* ¶ 12.

decision regarding tax years 2008 through 2011, and tax year 2012.[24] After denial of its administrative protests and appeals, BME filed the present lawsuit arguing that it is entitled to reimbursement:, first for overpayment of Excise Tax for the years 2008 through 2012 in the amount of $6,486,919.39, plus interest and second, the penalty paid by BME in the amount of $1,296,124.60, totaling an overpayment of $7,783,043.99.[25]

In cross-motions for summary judgment,[26] BME and the government presented arguments regarding the overpayment of the excise tax plus interest, an amount of $6,486,919.39.[27] BME argued that the assessed tax was inaccurately calculated because the coal it produced was "sold at retail," and therefore 26 U.S.C. § 4216(b) (the "Constructive Price Rule") and its provisions related to an artificial constructive price should have been used when assessing the tax—not the amount paid from BME to Deseret.[28]

However, this argument was rejected in light of the plain language of 26 U.S.C. § 4216(b).[29] The constructive price should not have been used because the coal was sold in a "non-arm's length transaction" at an above market sales price; thus, the Constructive Price Rule does not apply.[30] The Prior Summary Judgment Order concluded that there was no ambiguity in the language of the statute, and even if there were, under *Chevron, U.S.A., Inc. v.*

---

[24] *Id.* ¶ 26.

[25] *Id.* ¶ 49.

[26] United States' Motion for Summary Judgment, docket no. 32, filed July 27, 2015l; Motion and Memorandum in Support, docket no. 35, filed July 27, 2015.

[27] Prior Summary Judgment Order at 3–4.

[28] *Id*. at 7.

[29] *Id.*

[30] *Id*. at 8.

*Natural Resources Defense Council, Inc*,[31] the IRS interpretation of the statute receives deference.[32] Additionally, the Prior Summary Judgment Order concluded that the IRS interpretations of Treas. Reg. §§ 48.4216(b)-1 and -2 and § 48.4121-1—regulations BME relied on for their own interpretation of the Constructive Price Rule—also receive deference under *Auer v. Robbins*[33] and *Chevron*.[34]

Although BME's motion for summary judgment was denied, the Government's motion for summary judgment was granted in part and denied in part because there remained an outstanding issue of fact as to the appropriateness of the accuracy related penalty.[35] Specifically, the Prior Summary Judgment Order identified narrow issues for consideration: if BME was aware of and relied on Revenue Ruling 81-188 (which discusses the Constructive Price Rule) when it filed its tax returns during the relevant times at issue and if that reliance could mitigate the imposed penalty.[36] The Government now seeks to resolve this question in its favor.[37]

As established in 26 U.S.C. § 6662(b), the underpayment of taxes due to negligence is subject to a 20% penalty.[38] Federal statute and regulations provide that the penalty does not

---

[31] 467 U.S. 837 (1984).

[32] Prior Summary Judgment Order at 7–13.

[33] 519 U.S. 452, 461 (1997).

[34] Prior Summary Judgment Order at 10.

[35] *Id.* at 21.

[36] *Id.*

[37] Second Motion for Summary Judgment at 2–3.

[38] 26 U.S.C. § 6662(b).

apply if the taxpayer can prove a *reasonable basis* for their return position[39] or can prove that their negligent underpayment was due to *reasonable cause and good faith*.[40]

The Government asserts that the undisputed facts show that the penalty was appropriately imposed because BME was negligent and did not have a reasonable basis for its return position. Specifically, the government argues that Revenue Ruling 81-188 is inapplicable and BME cannot rely on it.[41] BME maintains that it was reasonable to rely on Revenue Ruling 81-188 even if there was no actual knowledge of the ruling, and that there was reasonable cause and good faith which should excuse BME from being penalized for negligence.[42] The Government replied, reiterating its original arguments from its First Motion for Summary Judgment and denying that BME could have had a reasonable cause or acted in good faith because BME exercised no diligence and disregarded the plain meaning of the statues to justify its position.[43]

**UNDISPUTED MATERIAL FACTS[44]**

1.    In preparing its Quarterly Excise Tax Returns at issue, BME relied on its interpretation of the following:

        a. 26 U.S.C. § 4216;

        b. Treas. Reg. §§ 48.4216(b)-1 and -2;

        c. Treas. Reg. § 48.4121-1; and

---

[39] Treas. Reg. § 1.6662-3(b)(3) (emphasis added).

[40] 26 U.S.C. § 6664, Treas. Reg. § 1.6664-4 (emphasis added).

[41] Second Motion for Summary Judgment at 12, 14.

[42] Opposition at 12.

[43] Reply at 9.

[44] While the parties supplied additional facts, those which were not determined to be material have not been included in the statement of facts here.

d. The IRS' Audit Technique Guide for Coal Excise Tax (May 2005).[45]

2.      BME was aware of and relied on Revenue Ruling 81-188 in preparing its Quarterly Excise Tax Return in the third quarter of 2011, beginning in September 2011, in addition to its understanding of: 26 U.S.C. § 4216, Treas. Reg. §§ 48.4216(b)-1 and -2, Treas. Reg. § 48.4121-1, and the IRS' Audit Technique Guide for Coal Excise Tax (May 2005).[46]

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[48] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[49] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[50]

---

[45] Opposition ¶ 1 at x (undisputed).

[46] Opposition ¶ 2 at x (undisputed).

[47] Fed. R. Civ. P. 56(a).

[48] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[49] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[50] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan,* 647 F.3d 950, 959 (10th Cir. 2011).

**DISCUSSION**

**A. BME Is Subject to An Accuracy Related Tax Penalty Because Neither Underpayment Penalty Exception Applies.**

It is the taxpayer's responsibility to prove that the penalty should not apply.[51] The 20% penalty for negligent underpayment of taxes under 26 U.S.C. § 6662 can be excused for two reasons. First, if the taxpayer had a reasonable basis for its negligence, then by IRS definition, the taxpayer is not considered to have been negligent and the penalty does not apply.[52] It is the taxpayer's burden to prove this reasonable basis, and the penalty is waived if the taxpayer does prove this.[53] Second, the penalty can be excused—negligence notwithstanding—if the taxpayer can prove it had a reasonable cause and acted in good faith under 26 U.S.C. § 6664.[54] Here, BME argues it is exempt from the underpayment penalty because both exemptions apply: it had a reasonable basis for its negligence (and therefore cannot be considered negligent and subject to the penalty provisions of 26 U.S.C. § 6662), any negligence can be excused because BME acted in good faith with a reasonable cause.[55] However, BME has failed to meet its burden of proof that either of these exemptions apply.

**1. BME's Reliance on Its Own Interpretation of 26 U.S.C. § 4216(b) and Revenue Ruling 81-188 is Not A Reasonable Basis for Its Return Position in Its Tax Filings.**

26 U.S.C. §6662, establishes that a penalty is to be imposed for any underpayment of taxes attributable to "negligence or disregard of the rules or regulations."[56] The Government

---

[51] *Higbee v. C.I.R.*, 116 T.C. 438, 446 (2001) (quoting H. Conf. Rept. 105–599, at 241 (1998), 1998–3 C.B. at 995).

[52] Treas. Reg. § 1.6662-3(a).

[53] *Id.*

[54] Treas. Reg. § 1.6664–4(a).

[55] Opposition at 2.

[56] 26 U.S.C. §6662(b)(1).

argues that BME has been negligent and disregarded the plain meaning of the statute and the Treasury Regulations and therefore should be subject to the penalty.[57] BME argues that it cannot be considered negligent because its filings had a reasonable basis in BME's own reasonable interpretation of the Constructive Price Rule[58] and because it relied on guidance related to that rule offered in Revenue Ruling 81-188.[59]

Treas. Reg. § 1.6662-3(b)(1) defines "negligence" under 26 U.S.C. §6662 as "any failure . . . to exercise ordinary and reasonable care in the preparation of a tax return  . . . [a] return position that has a reasonable basis as defined in paragraph (b)(3) of this section is not attributable to negligence."[60] Paragraph (b)(3) states,

> Reasonable basis is a *relatively high standard* of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely *arguable* or that is merely a colorable claim. If a return position is *reasonably* based on one or more of the authorities set forth in § 1.6662–4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662–4(d)(2).… In addition, the reasonable cause and good faith exception in § 1.6664–4 may provide relief from the penalty for negligence or disregard of rules or regulations, even if a return position does not satisfy the reasonable basis standard.[61]

As an initial matter, BME cannot assert that its own interpretation of 26 U.S.C. § 4216(b) and related federal regulations can serve as a rational basis for its filings and return position for the years in question. Although "[a]pplicable provisions of the Internal Revenue Code and other

---

[57] Government's Motion at 1–2.

[58] Opposition at 3.

[59] *Id.* at 6.

[60] Treas. Reg. § 1.6662-3(b)(1).

[61] Treas. Reg. § 1.6662-3(b)(3) (emphasis added).

statutory provisions" as well as "regulations construing such statutes"[62] are recognized as applicable authorities that can be used to show that a taxpayer had a reasonable basis for its return position,[63] the Prior Summary Judgment Order already concluded that 26 U.S.C. § 4216(b) was *unambiguous*[64] and that it was inapplicable to BME's sales.[65] BME's current argument relying its *own* interpretation of the Constructive Price Rule attempts to relitigate matters already decided. Given the determination reached in the Prior Summary Judgment Order, BME cannot expect to use its discredited interpretation of the Constructive Price Rule as a "reasonable basis" for its return position during the tax periods at issue.

That is why the Prior Summary Judgment Order specifically identified the narrow issue for further consideration: whether BME's purported reliance on Revenue Ruling 81-188 could "provide a reasonable basis for BME's position."[66] Like statutory and regulatory language, Treas. Reg. § 1.6662–4(d)(3)(iii) recognizes revenue rulings as an authority that can be relied on as a reasonable basis for a return position.[67] But Treas. Reg. § 1.6662-4(d)(3)(ii) specifies that

> The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the authority. For example, a case or revenue ruling having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. . . . Any document described in the preceding sentence that is more than 10 years old generally is accorded very little weight. However, the persuasiveness and relevance of a document, viewed in light of subsequent developments, should be taken into account along with the age of the document.[68]

---

[62] Treas. Reg. § 1.6662–4(d)(3)(iii).

[63] Treas. Reg. § 1.6662-3(b)(3).

[64] First Summary Judgement Memorandum at 7.

[65] *Id.* at 21; Treas. Reg. § 1.6662–4(d)(3)(iii).

[66] First Summary Judgement Memorandum at 21.

[67] Treas. Reg. § 1.6662–4(d)(3)(iii).

[68] Treas. Reg. § 1.6662-4(d)(3)(ii)

Under this guidance, Revenue Ruling 81-188 is not relevant, is unpersuasive, and must be accorded little weight due to its age. Although Revenue Ruling 81-188 includes a discussion of constructive price, Revenue Ruling 81-188 does not address facts or issues that are applicable to BME's circumstances. Instead of the coal industry, the ruling discusses the application of the Constructive Price Rule in the trucking industry in determining prices, under a different code section, for manufactures who sell truck semi-trailer chassis to wholly owned subsidiaries at above market price.[69] Revenue Ruling 81-188 does not discuss the particular excise tax at issue here and instead discusses specific percentage rules which are inapplicable to the present circumstances.[70] The tax that Revenue Ruling 81-188 does discuss, 26. U.S.C. § 4061,[71] was repealed in 1984.[72] Revenue Ruling 81-188 was issued in 1980[73] long before the events at issue in this case and well outside the 10 year window of persuasiveness that Treas. Reg. § 1.6662-4(d)(3)(ii) establishes.

Revenue Ruling 81-188 cannot serve as an authority on which BME could have relied on as a reasonable basis for its underpayment. BME cannot demonstrate that it had a reasonable basis for its return position as would be recognized under Treas. Reg. § 1.6662-3(b)(3). BME's underpayment must be considered negligent for the purposes of 26 U.S.C. §6662.

---

[69] Gen. Counsel Memorandum ("Revenue Ruling 81-188) at *2, GCM 38430 (I.R.S. June 30, 1980).

[70] Id. at *3.

[71] Id. at *2.

[72] 26 U.S.C §§ 4061 to 4063. Repealed. Pub.L. 98-369, Div.A, Title VII, § 735(a)(1), July 18, 1984, 98 Stat. 980.

[73] Id. at *1.

### 2. BME Reliance on Reliance on Its Own Interpretation of 26 U.S.C. § 4216(b) and Revenue Ruling 81-188 Does Not Show That BME Had Reasonable Cause or Acted in Good Faith with Respect to Its Return Position.

BME also argues that it is excused from the penalty because it had a reasonable cause and acted in good faith despite its underpayment of taxes from 2008–2012.[74] 26 U.S.C.§ 6664(c)(1) provides that if an underpayment is attributable to negligence, the penalty can be waived "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."[75] BME contends that it acted in good faith and a reasonable cause because for its return position because it had "an honest misunderstanding of the law."[76] This argument is not correct.

Treas. Reg. §1.6664-4 outlines several scenarios (along with specific factual patterns) where a taxpayer can be found to have had reasonable cause and have acted in good faith when underpaying taxes. These include: reliance on opinion or advice;[77] underpayments attributable to reportable transactions;[78] pass-through items;[79] special rules for substantial understatement penalty attributable to tax shelter items of corporations;[80] and valuation misstatements of charitable deduction property.[81] BME does not argue that any of these specific scenarios are

---

[74] Opposition at 12.

[75] 26 U.S.C. §6664(c)(1).

[76] Opposition at 13.

[77] Treas. Reg. §1.6664-4(c).

[78] Treas. Reg. §1.6664-4(d).

[79] Treas. Reg. §1.6664-4(e).

[80] Treas. Reg. §1.6664-4(f).

[81] Treas. Reg. §1.6664-4(h).

applicable and instead argues that its underpayment can be excused under the general guidance

provided at Treas. Reg. at §1.6664-4(b):[82]

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. . . . . Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer.[83]

In support of the argument that BME's underpayment was attributable an "honest

misunderstanding of fact or law," BME cites to two cases: *Lemery v. C.I.R*[84] and *Howard v.*

*C.I.R.*[85] *Lemery* concerned a Canadian citizen who failed to disclose over $140,000 in capital

gains after he sold stocks while living in the United States.[86] The Tax Court determined that the

taxpayer would not be subject to an underpayment penalty because the official declaration that

the taxpayer relied on was in conflict with a subsequently issued tax regulation.[87] The conflict

"created such confusion and uncertainty" that the Tax Court could not say that the taxpayer's

actions "were due to negligence or intentional disregard of the regulations."[88] In *Howard*, the

Tax Court excused a truck driver from the underpayment penalty because the truck driver

prepared his own tax return and attempted to apply statutory language that did not use a common

---

[82] Opposition at 12.

[83] Treas. Reg. §1.6664-4(b)(1).

[84] 54 T.C. 480 (1970).

[85] 2015 WL1060434 (Tax Court March 9, 2015).

[86] *Lemery* 54 T.C. at 482-484.

[87] *Id.* at 490.

[88] *Id.* at 490-491.

term "home" consistent with its usual and ordinary meaning.[89] This, according to the Tax Court, was an honest misunderstanding of the law."[90]

These cases are distinguishable. Unlike the taxpayer in *Howard*, BME is not a truck driver who filed a tax return on his own, but instead a sophisticated corporation that operates in multiple states.[91] Given that "experience, knowledge, and education of the taxpayer" must, according to the regulation, be taken into account[92] BME is not on equal footing as the truck driver in *Howard* in determining good faith and reasonable cause. And BME was not misled by a common term used in a peculiar way. And unlike *Lemery*, the circumstances in the present case present no identified conflict between the Constructive Price Rule and other IRS provisions that creates the confusion. The Rule has been declared clear and unambiguous[93] and the Revenue Ruling has been determined to be inapplicable.[94] BME's decision to rely on its own faulty interpretation of the law and an irrelevant revenue ruling cannot be considered to be acting with "reasonable cause with a good faith basis" under Treas. Reg. §1.6664-4(b).[95]

The undisputed facts show that, as a matter of law, none of the exemptions can apply to BME's actions. The underpayment penalty was appropriately imposed. BME is not entitled to a refund and the Government is entitled to summary judgment. The Government's Second Motion for Summary Judgment is granted.

---

[89] 109 T.C.M. (CCH) 1193 at *8 (T.C. 2015).

[90] *Id.*

[91] Corrected Amended Complaint at ¶¶1-2.

[92] Treas. Reg. §1.6664-4(b)(1).

[93] First Summary Judgement Memorandum at 7-10.

[94] Supra at 12.

[95] Opposition at 12.

**ORDER**

IT IS HEREBY ORDERED that the Government's Motion[96] for Summary Judgment is

GRANTED. With this order, all issues in Plaintiff's Complaint[97] have been adjudicated.

Plaintiff's complaint is dismissed with prejudice.

The Clerk is directed to close the case.

Dated September 27, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[96] United States' Second Motion for Summary Judgment, docket no. 67, filed January 30, 2017.

[97] Corrected Amended Complaint, docket no. 26, filed December 30, 2014